**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DALE RICHARD DANSER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No.      CIV-11-26-HE** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT & RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits (DIB). This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **AFFIRMED.**

## PROCEDURAL HISTORY

Plaintiff filed his application for DIB on June 19, 2006, alleging a disability beginning April 25, 2006 (TR. 22). The application was denied on initial consideration and on reconsideration at the administrative level (TR. 71-73). Pursuant to Plaintiff's request, a hearing *de novo* was held before an ALJ on August 26, 2008 (TR. 32-70). At the hearing Plaintiff amended his onset date to March 17, 2006, and testified in support of his

1

application (TR. 43, 39-62). The ALJ issued his decision on August 20, 2009, finding that Plaintiff was not entitled to DIB (TR. 22-30). The Appeals Council denied the Plaintiff's request for review on September 21, 2010, and thus, the decision of the ALJ became the final decision of the Commissioner (TR. 6-8).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## THE ADMINISTRATIVE DECISION

In addressing the Plaintiff's disability application, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity from his onset date so the process continued (TR. 24). At step two, the ALJ concluded that Plaintiff had the following severe impairments: rheumatoid arthritis, sleep apnea, plantar fasciitis, status post triple bypass surgery, hypertension, hypercholesterolemia, hyperlipidemia, cardiomyopathy with an ejection fraction of 45%, mild mitral insufficiency, moderate bilateral carotid vascular disease (20-50% stenosis), obesity, migraine headaches, and ischemic heart disease (TR. 24). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 24). At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work (PRW) (TR. 29).

At the point that step five is reached, a disability affecting work activity has been shown, and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform "the full range of sedentary work" (TR. 26). The ALJ considered the claimant's age, education and work experience and applied Medical Vocational Rule 201.28 and Rule 201.21 to determine that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB (TR. 30).

**ISSUES PRESENTED**

On appeal to this Court, Plaintiff alleges that the ALJ (I) erred in disregarding the medical records of the Plaintiff's treating physician, Ewa Olech, M.D; (II) erred in his analysis of Plaintiff's credibility; and (III) erred in relying on the Medical Vocational Guidelines, and in failing to obtain vocational expert (VE) testimony.

**ANALYSIS**

**I.    The ALJ's Evaluation of the Medical Evidence.**

Plaintiff contends that the ALJ improperly rejected the opinions of a treating physician, Ewa Olech, M.D. Plaintiff specifically points to a letter written by Dr. Olech dated November 12, 2009, in which she stated that Plaintiff has seropositive Anti-CCP positive rheumatoid arthritis which she described as the "most severe, aggressive and destructive type of this disease" (TR. 15). Her summation of Plaintiff's condition, however, does not indicate that he suffers continuous intractable pain or experiences functional limitations that would preclude his performing sedentary work:

> The patient has been treated aggressively with various anti-rheumatic medications, including multiple biologics. He is currently on the combination regimen of Methotrexate with sub-cutaneous injections of Simponi. Despite the treatment, Mr. Danser has been having active disease with occasional severe disease flares, for which he periodically requires intra-muscular corticosteroid injections.

(TR. 15).

Dr. Olech refuted a statement made in a medical record dated February 27, 2007, generated by Plaintiff's cardiologist.  The medical record stated that Plaintiff "runs four miles per day" (TR. 15, 653). Dr. Olech stated her opinion that the cardiologist's

4

statement must have been erroneous, because "it would be very unlikely for Plaintiff to be able to run four miles a day with active arthritis, especially with significant synovitis in the joints of the lower extremities" (TR. 15).

As the Commissioner points out, Dr. Olech's letter was not made a part of the record until November 12, 2009, almost three months after the ALJ's decision. Dr. Olech's letter was, however, before the Appeals Council, and the Appeals Council found no reason to review the ALJ's decision, despite the letter from Dr. Olech.  Moreover, Dr. Olech's letter failed to qualify as a medical opinion because it did not include functional limitations attributable to Plaintiff's severe rheumatoid arthritis, other than the observation that it was unlikely that Plaintiff could run four miles. Statements that do not reflect judgments about the nature and severity of a claimant's condition and what he can still do despite his impairments are not medical opinions. *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008); and 20 C.F.R. §404.1527(a)(2). In sum, Dr. Olech's letter does not contain sufficient information to support a reversal and remand of this case. Thus, it appears that the ALJ did not err in his analysis of the medical evidence.

## II.    The ALJ's Credibility Analysis.

 Plaintiff also challenges the ALJ's credibility analysis (See Plaintiff's Brief at pages 8-12). "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). In *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), the Tenth Circuit set forth the framework for the

proper analysis of a claimant's pain. First, the objective medical evidence must demonstrate a pain-producing impairment. Second, a "loose nexus" must exist between the proven impairment and the claimant's subjective allegations of pain. If these two conditions are satisfied, the ALJ must then determine whether, considering all the evidence both objective and subjective, the claimant's pain is in fact disabling. *Id.*, 834 F.2d at 163-164. "Objective evidence" is any evidence that can be discovered and substantiated by external testing. *Id.* at 162. "Subjective evidence" consists of statements of the claimant that can be evaluated only on the basis of credibility. *Id.* at 162, n. 2. To determine the credibility of pain testimony, the ALJ should consider such factors as:

> The levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Branum v. Barnhart*, 385 F.3d 1268, 1273-1274 (10th Cir. 2004) (*quoting Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted)).

A court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quotation omitted).

In this case, the ALJ found that the medical evidence supported a finding that Plaintiff's underlying impairments could reasonably be expected to produce pain or

other symptoms. The ALJ then examined the evidence to determine whether "the intensity, persistence and limiting effects" of Plaintiff's pain to determine "the extent to which they limit the claimant's ability to do basic work activities" (TR. 26).

The ALJ thoroughly discussed the medical evidence, the testimony of both Plaintiff and his wife, and Plaintiff's activities of daily living (TR. 26-28).  The ALJ also considered whether Plaintiff exhibited manifestations of severe, intractable pain, such as "premature aging, weight loss, impaired gait, weakness in the extremities, progressive physical deterioration and atrophy of associated musculature" and determined that such changes were not evident in this case (TR. 27).  Because the ALJ's credibility analysis is supported by substantial evidence in the record as a whole, the decision of the ALJ on this point should be affirmed.


**III.    The ALJ's Reliance on the Medical Vocational Guidelines.**

Plaintiff's final challenge to the ALJ's decision is based on the ALJ's step-five finding that Plaintiff can perform the full range of sedentary work (See Plaintiff's Brief at pages 12-14). Specifically, Plaintiff contends the ALJ erred at step five in conclusively applying the Medical Vocational Guidelines, commonly known as "the Grids," rather than seeking testimony from a vocational expert.

The Grids are tables prepared by the Social Security Administration which evaluate a claimant's ability to work by matching the claimant's age, education, and work experience with his capacity to perform work.  20 C.F.R. Pt. 404, Subpt. P, App. 2 (1991). The Grids "help evaluate whether there exist sufficient jobs that can be

performed given the claimant's age, education, and physical limitations." *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). "The Grids are a shortcut that eliminate the need for calling in vocational experts." *Trimiar v. Sullivan*, 966 F.2d 1326, 1332 (10th Cir. 1992) (internal quotations and citations omitted). If a claimant fits within a "not disabled" grid category, the Commissioner presumes that sufficient jobs exist in the national economy that the claimant can perform.

The Grids are divided into five categories of exertional capacity: sedentary, light, medium, heavy, and very heavy work. The exertional capacity of each category is defined in 20 C.F.R. §404.1567. Each residual function category measures the exertional level required to perform work within the category. "Exertional level" refers to the claimant's strength or ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. § 404.1545(b). Each residual function category is subdivided by age, education, and work experience. By matching the claimant's age, education, and work experience with his residual function capacity, the Commissioner can determine whether the claimant is or is not disabled.

The Grids may not be applied conclusively, however, unless the claimant's characteristics precisely match the criteria of a particular grid. 20 C.F.R. § 404.1545(d). Moreover, an ALJ cannot conclusively rely on the Grids unless the ALJ finds that (1) no significant nonexertional impairment exists, (2) the claimant can do the full range of work in the particular RFC category every day; and (3) the claimant can perform most of the jobs available in that range. *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). If the Grids cannot be applied, the ALJ must resort to testimony from a

vocational expert to establish that a significant number of jobs exist in the national economy which the claimant can perform. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1332-1333 (10th Cir. 1992).

In this case, the ALJ made findings consistent with *Thompson* (TR. 26-27). Also, the ALJ's RFC assessment that Plaintiff was able to perform the full range of sedentary work was supported by substantial evidence, and the ALJ applied the correct legal standards in determining the severity of Plaintiff's pain as a nonexertional impairment. The "mere presence of a nonexertional impairment does not automatically preclude reliance on the Grids.  The presence of nonexertional impairments precludes reliance on the Grids only to the extent that such impairments limit the range of jobs available to the claimant." *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). *See also Ray v. Bowen*, 865 F.2d 222 (10th Cir. 1989) ("[T]he ALJ's finding that Miss Ray suffered from no nonexertional impairment severe enough to limit the range of jobs available to her, and his consequent reliance on the grids, was supported by substantial evidence."). Further, the ALJ's reliance on the Grids in this case is not error because the ALJ found Plaintiff's testimony regarding his nonexertional impairments not fully credible (TR. 26-27). *Castellano v. Secretary of Health and Human Servs*, 26 F.3d 1027, 1030 (10th Cir. 1994) (citing *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) ("Use of the Grids is only precluded to the extent that nonexertional impairments further limit the claimant's ability to perform work at the applicable exertional level.").

Plaintiff's characteristics on the date of the ALJ's opinion precisely match the criteria for 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.21 and 201.28. On that date, Plaintiff was forty-five-years-old, was a high school graduate, was limited to sedentary

work, and regardless of his skill level was presumed to be not disabled under the Grids. Thus, the ALJ's conclusive application of the Grids to this case was appropriate.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and should be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **August 13, 2012**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 23rd day of July 2012.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE